UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVONNA WILLIAMS,

                          Plaintiff,

v.                                                      Case # 15-CV-6119-FPG

                                                        DECISION AND ORDER

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

     Davonna Williams ("Williams" or "Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") which denied her application for Social Security Disability Insurance Benefits ("DIB").  ECF No. 1.  This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

     Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  ECF Nos. 12, 15.  For the reasons stated below, the Commissioner's Motion is granted, and Plaintiff's Motion is denied.

## BACKGROUND

     On August 6, 2012, Williams protectively filed an application for DIB.  Tr.[1] 134-135, 149.  She alleged that she had been disabled within the meaning of the Act since October 20, 2011.  Tr. 134-135.  After her application was denied at the initial administrative level, a hearing was held before Administrative Law Judge Hortensia Haaversen ("the ALJ") on July 31, 2013 in which the ALJ presided by videoconference and considered Plaintiff's application *de novo*.  Tr. 40-66.  Williams appeared at the hearing with her attorney and testified.  *Id.*  Bryan Homer, a

_____

[1]    References to "Tr." are to the administrative record in this matter.

Vocational Expert ("VE"), also testified.  Tr. 59-65.  On February 14, 2014, the ALJ issued a decision finding that Williams was not disabled within the meaning of the Act.  Tr. 16-26.  That decision became the final decision of the Commissioner when the Appeals Council denied Williams's request for review on January 6, 2015.  Tr. 1-4.  Williams timely commenced this action on March 5, 2015, seeking review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.        District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).  It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.       Disability Determination

Determination of whether a claimant is disabled within the meaning of the Act requires an ALJ to follow a five-step sequential evaluation.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in

substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination or impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the analysis proceeds to step four, and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f). The ALJ then determines whether the claimant's RFC permits him or her to perform the requirements of their past relevant work. If they can, the claimant is not disabled. If they cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

I.   **The ALJ's Decision**

The ALJ's written decision of February 14, 2014 analyzed Williams's claim for benefits under the process described above.   Upon review of that decision and the supporting administrative record, this Court finds that the ALJ's decision is based upon the correct legal standards, and that her determination that Williams is not disabled is supported by substantial evidence.

At step one, the ALJ found that Williams had not engaged in substantial gainful activity since October 20, 2011, the alleged onset date. Tr. 18.   At step two, the ALJ found that Williams has the following severe impairments: depression, personality disorder, and past history of polysubstance abuse in remission.   Tr. 18-19.   At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 19-20.

The ALJ then determined that Williams retained the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> She is able to follow and understand simple directions and instructions.  She is able to perform simple tasks independently.  She is able to maintain attention and concentration.  She is able to learn new tasks and perform complex tasks with supervision.  She is not able to relate adequately with others nor deal with stress.  Therefore, a position dealing with things rather than people is recommended in a low stress environment, defined as only occasional decision making.  She is limited to work activity with infrequent public contact, defined as only occasional interaction.  Since she cannot make appropriate decisions, there should be only occasional decision making on the job.  She needs a job that does not work directly with money.

Tr. 20-24.

At step four, the ALJ relied on the testimony of the VE and found that this RFC prevents Williams from performing her past relevant work as a bartender or hostess.  Tr. 24.

At step five, the ALJ relied on the testimony of the VE and found that Williams is capable of making an adjustment to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience.  Tr. 25-26.  Specifically, the VE testified that Williams could work as a laundry worker, industrial cleaner, hand packager, machine packager, or machine feeder.  Tr. 25-26.  Accordingly, the ALJ concluded that Williams was not "disabled" under the Act.  Tr. 26.

## II.    Williams's Challenges

Williams raises two challenges to the ALJ's decision[2]: (1) the ALJ's RFC is not supported by substantial evidence because Williams would steal money *or goods* at any place of employment; and (2) the ALJ did not properly consider the opinion of Williams's treating licensed clinical social worker ("LCSW").  ECF No. 12, at 9-13.  These arguments are addressed in turn.

### 1.    The RFC Assessment that Williams Cannot Work Directly With Money is Supported by Substantial Evidence.

Williams argues that she has kleptomania that creates an uncontrollable urge to steal money and goods.  ECF No. 12, at 9-11.  Thus, Williams asserts that the ALJ erred in determining that she could hold a job that does not have direct contact with money, because she is also prone to stealing goods.  *Id.*  This is the only portion of the RFC that Williams disputes. *Id.*  The Commissioner maintains that substantial evidence supports the ALJ's determination as to the limitations imposed by Williams's kleptomania.  ECF No. 15, at 17-23.

---

[2]    In Plaintiff's Notice of Motion, she requests that this Court reverse this matter and remand it solely for the calculation of benefits or remand this matter for a new hearing because there is new and material evidence that the Commissioner should consider.  This Court notes, however, that nowhere in Plaintiff's Memorandum of Law is such "new and material evidence" mentioned or explained.  ECF No. 12.

RFC is defined as "what an individual can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999)); *see also* 20 C.F.R. § 416.945(a)(1). An ALJ determines a claimant's RFC by considering his or her "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4).

As stated above, the ALJ found that Williams must be limited to "a job that does not work directly with money." Tr. 20-24. Williams claims that this limitation is insufficient because she "would steal money *or goods* at any place of employment." ECF No. 12, at 9 (emphasis in original). This Court finds, however, that substantial evidence in the record supports the ALJ's limitation.

The ALJ arrived at this limitation by relying on the opinions of Williams's licensed clinical social worker, David Hickson ("Mr. Hickson"), state agency psychologist Tammy Inman-Dundon ("Ms. Inman-Dundon"), state agency physician Aroon Suansillppongse, M.D. ("Dr. Suansillppongse"), and state agency psychologist Yu-Ying Lin, Ph. D ("Dr. Lin"). Tr. 23-24. She also relied on Williams's testimony. Tr. 23.

Mr. Hickson opined that Williams's kleptomaniac behavior is "an attempt to borrow self-esteem . . . through the acquisition of goods," and he compared it to the materialism of the general culture. Tr. 23 (citing Tr. 305). Williams mischaracterizes Mr. Hickson's mental health assessment by stating: "Clearly, Mr. Hickson does not believe that Plaintiff would have any ability to exercise control over her urges to steal money *or goods* at [sic] if she were to attempt to return to work." ECF No. 12, at 12 (emphasis in original). In his letter to Williams's counsel, Mr. Hickson made no such statement and did not draw a distinction between her desire to steal money or goods. Tr. 305-06. Rather, he discussed kleptomania in general and described the

affect it has had on Williams's life. *Id.* The ALJ clearly took Mr. Hickson's assessment into consideration when she crafted the RFC determination, by noting Mr. Hickson's opinion and stating that: "Recognizing this struggle, the undersigned has limited the claimant's access to the most liquid form of wealth—money." Tr. 23.

Moreover, Ms. Inman-Dundon specifically opined that Williams "has mild to moderate limitations from a psych perspective. She appears capable of entry level work, but may need a job where she does not work directly with money [due to] her kleptomania." Tr. 24 (citing Tr. 75). The ALJ was entitled to rely on this opinion pursuant to 20 C.F.R. § 416.912(b)(1)(vi); *see also Nosbisch v. Astrue*, No. 10-CV-285S, 2012 WL 1029476, at *4 (W.D.N.Y. Mar. 26, 2012) ("[A]n ALJ is entitled to rely upon the opinions of the state agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability."). Dr. Suansillppongse opined that Williams could perform simple tasks only and that she is minimally limited in concentration and social interaction, which the ALJ directly incorporated into the RFC assessment. Tr. 20, 24 (citing Tr. 337). Dr. Suansillppongse noted that Williams demonstrated impulsive or stealing behavior, but he did not report that she was incapable of working at a job where she would have contact with goods. Tr. 337. Similarly, Dr. Lin noted Williams's history of kleptomania and opined on her mental limitations, but he never suggested that Williams could not work with goods. Tr. 24 (relying on Tr. 293-96).

The ALJ also drew on Williams's own testimony in making the RFC determination. She noted that the limitation that Williams not work directly with money "avoid[s] some of the stealing problems of past jobs." Tr. 24. At her hearing, Williams testified that she has a "money addiction," and that she was fired from her jobs at Red Lobster and a gas station for stealing money. Tr. 56-57. Furthermore, Williams argues that her "uncontrolled" kleptomania makes it

impossible to work with money or goods (ECF No. 12, at 9), yet no health care provider ever described her kleptomania as "uncontrolled" (Tr. 196-98, 270, 293-94, 296, 305, 345, 354, 366). Williams underwent several monthly mental health assessments in 2013 at Rochester General Hospital Behavioral Health Network, and she reported each time that she had not stolen since October of 2012.  Tr. 348-49, 360, 373-78, 380, 382.

The ALJ was thus faced with a choice as to whether it was sufficient to limit Williams's exposure to money.   As explained previously, this Court's review of the Commissioner's decision is not *de novo*; the Commissioner's decision may only be set aside if it is not supported by "substantial evidence" or is the product of legal error.  *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (quoting *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998)); *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).  For the reasons stated above, this Court finds that the ALJ's RFC assessment that Williams cannot work directly with money is supported by substantial evidence.

2. **The ALJ Properly Considered the Opinion of Williams's Treating Licensed Clinical Social Worker.**

Williams also argues that the ALJ failed to properly consider the opinion of her social worker, Mr. Hickson.  ECF No. 12, at 11-13.  Mr. Hickson treated Williams for over a year and had 23 visits with her.  Tr. 305.  The Commissioner maintains that the ALJ adequately considered and discussed Mr. Hickson's opinion.  ECF No. 15, at 23-27.  This Court agrees.

A licensed clinical social worker is not considered an "acceptable medical source" pursuant to 20 C.F.R. § 416.913(a), and thus their opinions are not entitled to controlling weight. *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 386 (citing *Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015)).  Nonetheless, an ALJ must consider relevant evidence in the record provided by "[m]edical sources who are not 'acceptable medical sources,' such as . . . licensed

8

clinical social workers." SSR 06-03p, 2006 WL 2329939, at*2 (Aug. 9, 2006).  The amount of weight to give such opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole.  20 C.F.R. § 416.927(c).

"Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a . . . reviewer to follow the adjudicator's reasoning . . . ."  SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). Essentially, the Commissioner is "free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight," but "those decisions should be explained."  *Piatt*, 80 F. Supp. 3d at 493 (quoting *Oaks v. Colvin*, No. 13-CV-917-JTC, 2014 WL 5782486, at *8 (W.D.N.Y. Nov. 6, 2014)).

Williams asserts that Mr. Hickson's assessment contradicts the findings of the state agency review psychologists and the ALJ's RFC assessment, and that the ALJ "did not even mention LCSW Hickson's opinion in his [sic] analysis." ECF No. 12, at 12-13.  This assertion is inaccurate, however, because the ALJ discussed Mr. Hickson's findings in her decision with considerable detail.  Tr. 22-23.

Although the ALJ does not explicitly state the weight she gave to Mr. Hickson's opinion and could have more clearly explained her assessment, it is evident that she considered Mr. Hickson's opinion and weighed it against the other evidence.  For instance, the ALJ noted Mr. Hickson's opinion that Williams's kleptomania resisted all forms of treatment, including medication.  Tr. 23 (citing Tr. 305).  The ALJ pointed out, however, that Williams acknowledged

that "her cycle of decompensations stemmed from periods of prescription noncompliance." Tr. 23 (citing Tr. 197).   Moreover, the ALJ discussed Mr. Hickson's opinion that "kleptomania features an overwhelming compulsion to steal driven by a symbolic desire to fill a void in the psychic life.  It does not involve actual financial gain because the kleptomaniac does not sell the goods." Tr. 23 (citing Tr. 305).   The ALJ noted that this differed from Williams's testimony about her kleptomania symptoms, which she described as a "money addiction" that caused her to steal items and sell them through her parents' flea market.  Tr. 23 (relying on Tr. 55, 57-58).  The ALJ also considered Mr. Hickson's statement that Williams's behavior "is an attempt to borrow self esteem . . . through the acquisition of goods," comparing it to the legally acceptable materialism of the general culture.  Tr. 23 (citing Tr. 305).   Thus, the ALJ "[r]ecogniz[ed] this struggle" when making the RFC determination and "limited the claimant's access to the most liquid form of wealth—money." Tr. 23.

As explained above, the Commissioner is free to decide what weight to give a social worker's opinion, because he or she is not an "acceptable medical source."  Here, the ALJ discussed Mr. Hickson's findings and compared them against Williams's testimony and other evidence in the record.  Accordingly, the ALJ properly considered Mr. Hickson's opinion and did not commit legal error.

## CONCLUSION

For the reasons stated above, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED.  Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE.  The Clerk of the Court is directed to enter judgment and close this case.


      IT IS SO ORDERED.

Dated: April 14, 2016
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

11